**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Equal Employment Opportunity Commission,** | ) | **CASE NO. 1:10 CV 2882** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Kaplan Higher Education Corporation,** *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon Defendants' Motion to Compel Production of Documents and Information and Rule 30(b)(6) Witness.  (Doc. 61.)  Defendants Kaplan Higher Education Corporation, Kaplan, Inc., and Iowa College Acquisition Corporation d/b/a Kaplan University (collectively, "Kaplan") seek to compel discovery from Plaintiff Equal Employment Opportunity Commission ("EEOC") as to two matters.  First, Kaplan requests that the Court compel the EEOC to produce qualified representatives to appear at a deposition and answer questions regarding "Topic 10" identified in Kaplan's Amended Notice of Rule 30(b)(6) deposition.  Second, Kaplan seeks to compel the EEOC to produce documents and information

1

concerning the identities and contact information of the individuals the EEOC claims in the case were aggrieved by Kaplan's use of credit history information in employment hiring decisions. For the reasons stated below, Kaplan's motion to compel is granted as to both matters.

**Discussion**

*Topic 10*

Kaplan sets forth the following background as to its request for discovery on Topic 10. On March 24, 2011, Kaplan served a Rule 30(b)(6) deposition notice on the EEOC asking the EEOC to provide a deponent on the following Topics 7 and 8:

> 7.  Requirements, policies, practices, or procedures of Plaintiff relating to the performance of background checks or credit checks on any employees or applicants for employment with Plaintiff.
>
> 8.  Requirements, policies, practices, or procedures of Plaintiff relating to the use or consideration of background or credit history in employment or hiring decisions.

The EEOC objected to this notice, and Kaplan filed a motion to compel the discovery. The Court granted Kaplan's motion to compel discovery on Topics 7 and 8 in a Memorandum of Opinion and Order dated May 26, 2011, finding that the EEOC's use of background or credit checks in its own hiring of employees was relevant to Kaplan's asserted defense of business necessity in using such checks in its hiring process. (Doc. 31, Mem. of Op. and Ord. at 7-8.)

Kaplan asserts that, after the Court's May 26, 2011 ruling, the EEOC did not produce all relevant documents. Rather, it was only after Kaplan subpoenaed information from the United States Office of Personnel Management (OPM) in November 2011 that Kaplan discovered the EEOC possessed additional relevant documents that were not produced. In particular, the OPM sent two letters to Kaplan in response to Kaplan's subpoena in January 2012, indicating that the

EEOC is responsible for making its own employment and hiring decisions subject to binding guidance from the OPM and that OPM guidance includes making determinations about applicants' and employees' financial and credit history. OPM's letters also indicated that any relevant records concerning such determinations "were created by the EEOC and can be obtained from the EEOC." In addition, the letters indicated that the EEOC is responsible for designating the risk and sensitivity levels of positions at the EEOC and that any positions designated as "public trust" or "national security" require an investigation with a credit check. (*See* Kaplan Mot., Ex. 2.)

In light of the information obtained from OPM, Kaplan sent a letter to the EEOC on February 17, 2012, requesting documents pertaining to the EEOC's use of credit history in hiring and employment decisions, including the training EEOC personnel receive concerning such determinations and position descriptions for jobs that require an investigation of financial or credit history. (Kaplan, Ex. 5.) In a March 1, 2012 conference call between the parties as to this discovery request, the EEOC's counsel stated that it had just hours before become aware of an EEOC handbook that described how credit information is used in hiring decisions at the EEOC. The EEOC produced the handbook to Kaplan on March 12, 2012. The handbook indicates that the EEOC requires background investigations including credit checks on all individuals applying for positions designated by the EEOC as high or moderate risk and identifies 84 such high or moderate risk positions. (*See* Kaplan Mot., Ex. 6.)

After Kaplan received the handbook, Kaplan sent another letter to the EEOC on March 23, 2012, stating that while the handbook provided relevant information, it was not fully responsive to Kaplan's discovery requests. Kaplan stated that it was also entitled to

3

>job descriptions for each position that Appendix D of the EEOC Handbook lists as either a high risk or moderate risk position.  In addition, Kaplan is entitled to information and any documents concerning any training that any EEOC employee has received from the OPM or any other source on how to review an applicant's or employee's credit history and conduct a suitability determination based, in whole or in part, on that history.  Those documents would include any training materials received from the OPM or any other source as part of that training.

(Kaplan Mot., Ex. 7.)

According to Kaplan, the parties had further discussions regarding the discovery Kaplan considered relevant to Topics 7 and 8.  Kaplan contends that it requested discovery as to "position descriptions" and their risk level designations during the parties' discussions and that the EEOC agreed to this request.  Kaplan asserts that, although the "EEOC initially took the position that information concerning the assignment of risk designations for high and moderate risk positions was beyond the scope of topics 7 and 8," "the next day, the EEOC agreed *to produce position descriptions and an additional deponent to answer questions concerning those descriptions and their risk-level designations*."  (Kaplan Mem. at 5) (emphasis added.)  Kaplan asserts that, because the EEOC's counsel was not sure how long it would take to produce the position descriptions, and the deponent scheduled to appear on March 30, 2012 as to Topics 7 and 8 was not able to answer questions concerning either the position descriptions or the risk level designations, the EEOC's counsel proposed that Kaplan prepare a new topic specifying the position description testimony it sought in more detail and also agreed to produce an additional deponent after the close of Phase I fact discovery.  EEOC's counsel sent an email confirming this to Kaplan's counsel, stating:  "Defendant will circulate a 30b6 topic about the position descriptions . . . EEOC will not object to taking that deposition after the cutoff.  Both parties reserve their previously-documented positions about the scope of topics 7&8.  This Friday's

4

deposition will proceed as scheduled on topics 7 & 8 but the designee is not and will not be prepared to testify about PD's in this Friday's deposition - the PDs will be covered by the additional deposition to be scheduled."  (Kaplan Mot., Ex. 8.)

Kaplan's counsel responded to this email, stating that the EEOC's email was "generally accurate" but clarifying that the "testimony Kaplan seeks about the position descriptions is intertwined with Kaplan's interest in discovering how and why positions at the EEOC are designated as high or moderate risk."  (Kaplan Mot., Ex. 9.)  Thereafter, Kaplan served an Amended Notice of Rule 30(b)(6) Deposition including the following Topic 10:

> 10. Requirements, policies, practices, processes or procedures of Plaintiff relating to how and why positions within the EEOC are designated as high, moderate, or low risk and how those risk level designations are assigned to individual position descriptions, the basis for making those risk level designations, and the criteria used or relied upon to make those designations.

(Am. Notice of Rule 30(b)(6) Dep.)

On March 30, 2012, Kaplan took the deposition of the EEOC's Rule 30(b)(6) designee, Felandis Maurice Mosley, as to Topics 7 and 8.  The deposition did not cover the topics of position descriptions or risk level designations.  After Mr. Mosley's deposition, on April 2, 2012, the EEOC sent Kaplan an email stating:  "Based on EEOC's 30(b)(6) testimony provided on Friday, March 30, 2012, EEOC does not agree to Defendant's proposal to take a 30(b)(6) deposition on Defendant's proposed Topic 10."  (Kaplan Mot., Ex. 10.)

Kaplan contends the Court should compel the EEOC to produce qualified representatives to answer questions on Topic 10 as the EEOC agreed.  Kaplan contends the discovery sought in Topic 10 is merely "a requested refinement of Topic 8" (which the Court has already ordered the EEOC to provide) in that it seeks information that is "part and parcel of the requirements,

5

policies, practices, or procedures of Plaintiff relating to the use of consideration of background or credit history information in employment or hiring decisions." (Kaplan Mem. at 12.)  Kaplan contends the discovery sought is relevant to its defense of business necessity because "[t]he EEOC's own determination as to which of its positions require credit inquiries demonstrates the types of job duties that the EEOC believes warrant the use of a credit check, and it shows the business necessity that the EEOC believes justifies its own use of credit." (Kaplan Mem. at 13.) Moreover, Kaplan contends, "to the extent the EEOC's use of credit checks for specific positions is consistent with the practices it challenges in this lawsuit, this consistency supports Kaplan's estoppel defense" as the "doctrine of estoppel may bar a plaintiff from prosecuting claims when the plaintiff is simultaneously engaging in nearly identical conduct." (*Id.*)

The EEOC does not dispute Kaplan's iteration of the background events leading up to this discovery dispute. However, the EEOC takes the position in its brief opposing Kaplan's motion that discovery on Topic 10 should not be allowed because the requested discovery is irrelevant to the issues in the case, overly broad, and unduly burdensome given that the EEOC's Rule 30(b)(6) designee on Topics 7 and 8 testified extensively about the EEOC's internal practices in hiring and testified that the EEOC "does not and would not unfavorably adjudicate, or take adverse action against, an applicant or employee because of debt or financial history." (Opp. at 2-3.)  The EEOC argues that how and why the federal government defines positions or classifies positions according to risk level in accordance with OPM guidance has no bearing on any issue in this case but, instead, concerns "a completely different federal process that is entirely separate from background or credit." (Opp. at 3.)  In this regard, the EEOC asserts that it is "not free to designate positions in whatever risk category it chooses."  Rather, the EEOC

6

contends "[r]isk level designation is a function of Position Designation in the federal government," a process unique to government service whereby agencies analyze federal positions to preserve national security, protect government funds, and secure the public trust. EEOC asserts that the factors applied in "OPM's Position Designation System have nothing whatsoever to do with any applicant's or employee's credit history, are wholly unique to government service, have no application to private sector employment, and certainly have no application to Kaplan's business model." (Opp. at 6.) Moreover, EEOC argues that discovery as to the federal position designation process is unwarranted given that "it is the OPM that requires credit checks on some EEOC applicants and employees" and not the EEOC (and the EEOC disagrees with this requirement of OPM).

In addition to arguing that discovery sought in Topic 10 is irrelevant, the EEOC also argues that the discovery is overly broad and unduly burdensome in that it "would require EEOC to testify about how to apply OPM's Position Designation System to all of those 98 different positions (and perhaps more, depending on personnel updates) occupied by more than 2,000 employees who work in EEOC's headquarters, 53 field offices, and various programs including EEOC's: Office of Communications and Legislative Affairs; Office of Equal Opportunity; Office of Federal Operations; Office of the Chief Financial Officer; Office of General Counsel; Office of Human Resources; Office of Information Technology; Office of Inspector General; Office of Legal Counsel; Officer of Research, Information and Planning; Office of Executive Secretariat; and Office of Field Programs." (Opp. at 8.)

The Court has considered the parties' briefs and arguments and finds that the EEOC must provide a Rule 30(b)(6) deponent to testify as to Topic 10. Although the EEOC denies that

7

Topic 10 seeks relevant information, Kaplan has demonstrated that it has obtained information in discovery in the case (from the OPM and subsequently from the EEOC) indicating that risk level designations for positions at the EEOC are made by the EEOC itself and constitute the critical determinant of whether an EEOC position is subject to a credit check.  Thus, Kaplan's argument is persuasive that how and why the EEOC makes risk level designations for position descriptions is relevant to Kaplan's defense of business necessity.  Discovery as to how or whether the EEOC uses credit checks will inform the viability of Kaplan's business necessity defense and may also be relevant to Kaplan's estoppel defense if it is found that the EEOC's practices are consistent with the practices the EEOC challenges in this lawsuit.  The EEOC contends that in reality background checks are not used by the EEOC in hiring determinations.  But the Court finds that Kaplan is entitled to explore – and to obtain sworn testimony as to – its plausible theories of business necessity and estoppel in discovery.[1]  Furthermore, the Court does not find that providing the requested discovery will be unduly burdensome for the EEOC.  Kaplan states in its reply brief that it is simply asking for the EEOC to "provide a designee for a standard length Rule 30(b)(6) deposition to understand how and why the EEOC assigns some positions as high or moderate risk, thus requiring employees in those positions to undergo a credit check."  (Rep. at 10.)  The Court finds Kaplan's request for the EEOC to provide "one deposition of the person most knowledgeable about how [the EEOC's position] descriptions – in all of their complexity – are assigned a risk-level designation" is not unduly burdensome in the context of the case.  (Rep.

---

[1] In addition, the Court is dismayed by the EEOC's conduct in seemingly agreeing to an additional deposition on a new topic 10 before Mr. Mosley's deposition and then seemingly reneging on its agreement after the deposition.

8

at 11.)

Accordingly, Kaplan's motion to compel a qualified representative to appear at a deposition and answer questions regarding Topic 10 is granted.

*Identities of Aggrieved Individuals*

The second category of discovery Kaplan seeks to compel in its motion is documents and information sufficient to identify the individuals who the EEOC claims have been aggrieved by Kaplan's policies. (Kaplan Mem. at 13.) The EEOC has refused to provide such discovery, claiming that it is outside of the scope of Phase I fact discovery.[2] Moreover, the EEOC points out that it provided Kaplan with information identifying "potential claimants who applied to Kaplan and were rejected because of credit history," and Kaplan's own records reflect such information. (Opp. at 14.) The EEOC contends Kaplan is not entitled to compel "a separate identification of a group of claimants for who EEOC will seek relief." (*Id*.)

However, Kaplan contends it has a right to focus its liability defense on "those individuals that the EEOC claims were aggrieved by its policies" in the case and would be "severely disadvantaged" if the EEOC were permitted to develop its case based on information gathered about the individuals the EEOC claims were aggrieved by Kaplan's policies "while keeping Kaplan in the dark as to their identities." (Kaplan Mem. at 15.)

The Court agrees with Kaplan. *EEOC o/b/o Serrano v. Cintas Corp.*, Case No. 04-40132, 2010 WL 746430, at *1 (E.D. Mich. Mar. 2, 2010), cited by Kaplan, is persuasive to

---

[2]The Court's case management order bifurcates discovery in the case. The case management order provides that Phase I discovery includes non-expert discovery regarding "liability" and in a footnote notes: "By agreement of the parties, the individuals who are deposed during Phase I may be questioned on the issue of damages." (Doc. 16.)

show that the identities of the aggrieved individuals are relevant in the liability phase of the case. In *Serrano*, as here, the EEOC contended that it was entitled to withhold production of the identities of claimants on whose behalf the EEOC would be seeking damages in a gender discrimination case until the second stage of a bifurcated case.[3]  The court rejected the EEOC's position, finding that the identities of the aggrieved individuals was relevant in both phases of the case.  The court stated:

> The EEOC has offered no case authority supporting its refusal to produce the requested information.  It merely asserts that its pattern or practice case against Cintas is to be bifurcated into separate class and individual stages, though the exact nature of the bifurcation is uncertain at this point.  EEOC declares its intent to identify the individual victims of discrimination during the second stage of trial.  I find that proposal unsatisfactory.  Cintas is entitled to contest the issue of gender discrimination in both stages of a bifurcated case.  Defendant quite reasonably seeks to focus its attention upon the specific women on whose behalf the EEOC intends to seeks damages.  The information sought is relevant to the issues in controversy in both stages, and the EEOC has no principled reason to withhold it.

*Serrano*, Case No. 04-40132, 2010 WL 746430, at *1.

As in *Serrano*, this Court finds that the identities of the individuals the EEOC contends are aggrieved by Kaplan's practices, and on whose behalf the EEOC will seek relief, are relevant in this phase I "liability" stage of the case and are discoverable for the same reasons stated by the *Serrano* court.[4]  Accordingly, Kaplan's motion to compel the EEOC to disclose information

---

[3]The case was bifurcated into class and individual stages.

[4]The EEOC appears to contend that the identities of all aggrieved individuals on whose behalf the EEOC will seek relief may be withheld in this "liability" discovery phase because the parties' report of planning meeting stated that the EEOC "anticipate[d]" phase I discovery to focus on, among other things, "identification of aggrieved individuals subjected to that criterion *whom the EEOC may use as liability witnesses*." (*See* Doc. 11 at 14) (emphasis added.)  However, the Court's case management order did not prohibit discovery

10

sufficient to identify the individuals who the EEOC claims to have been aggrieved by Kaplan's policies is granted.

**Conclusion**

For the reasons stated above, Kaplan's Motion to Compel Production of Documents and Information and Rule 30(b)(6) Witness is granted. The EEOC must produce a Rule 30(b)(6) designee to testify as to the EEOC's position descriptions and how the position descriptions are assigned a risk level designation as requested in Topic 10. In addition, the EEOC must disclose to Kaplan information sufficient to identify the individuals the EEOC claims have been aggrieved by Kaplan's policies in this case.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/18/12

---

of the identities of aggrieved individuals in Phase I but simply noted the parties' agreement that "individuals who are deposed during Phase I may be questioned on the issue of damages." (*See* Doc. 16.)